## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GREGORY GREEN,

      Petitioner,

v.                                   **Case No. 3:13-cv-394-J-32PDB**

MICHAEL D. CREWS, *et al.*,

      Respondents.

_____

## PETITIONER'S SUPPLEMENTAL BRIEF

The Petitioner, **GREGORY GREEN,** by and through undersigned counsel and pursuant to this Court's order of October 1, 2014 (Doc 28), hereby files this Supplemental Brief in support of his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc 1).

## INTRODUCTION

During plea negotiations in the state court case whose judgment is being challenged before this Court, Mr. Green's counsel rendered constitutionally deficient performance when he failed to allow Mr. Green to consider a favorable plea offer from the state before that offer expired.  As a result of counsel's deficient performance, Mr. Green was sentenced to ten years in state prison instead of the one year in county jail available under the terms of the plea offer.

Mr. Green has thus demonstrated that he was prejudiced by his counsel's inadequate assistance, because there is more than a reasonable probability that the favorable plea offer would have been presented to the trial court, that the court would have accepted its terms, and that the sentence was less severe than the sentence that was ultimately imposed.  The state trial court's ruling to the contrary on this point was based on an unreasonable determination of the facts in light of the evidence presented in the state court 3.850 proceedings.

The Supreme Court's decision in *Missouri v. Frye*, 132 S.Ct. 1399 (2012), makes clear that Mr. Green is entitled to relief on the record as it stands, or at the very least to an evidentiary hearing at which he can prove his claim.  And Mr. Green should receive the same remedy as the defendant in *Lafler v. Cooper*, 132 S.Ct. 1376 (2012)*, the companion case to *Frye*: this Court should vacate the state court judgment and order the state to reoffer Mr. Green the one-year plea bargain.  *Cooper*, 132 S.Ct. at 1391.

## STATEMENT OF THE CASE

### Pre-Trial

On November 17, 2009, Mr. Green was arrested in Duval County, Florida, for his failure to return to the Duval County Jail from which he had been released as part

2

of a work release program.   Ex. F at 21.[1]  He was declared indigent and appointed a

state public defender.  Ex. PD-1 at 1.  Assistant Public Defender Todd Niemczyk was

assigned to his case.  *Id*.

**The Pre-Charging Plea Offer**

On December 15, 2009, another attorney from the Public Defender's Office,

Andrew Leiberman, visited Mr. Green in jail and told him that the state had made an

offer of twelve months' jail time.  Ex. F at 16 (Letter dated Jan. 26, 2010 from APD

Todd Niemczyk to Mr. Green; this letter was attached as Exhibit 1 to Mr. Green's

original postconviction motion under Fla.R.Crim.P. 3.850, Ex. F at 4).   Mr. Green

was told that if he rejected the plea, he would be prosecuted in Repeat Offender Court

and that the state would seek thirty years in prison.  *Id*.  In his 3.850 motion, Mr.

Green stated that the plea offer would expire forty days after December 15, 2009.  Ex.

F at 33 (state 3.850 motion as amended on Feb. 2, 2012).  What Leiberman likely

conveyed to Mr. Green was that, in accordance with standard state charging practice,

the offer would expire on the 40th day after Mr. Green's arrest, the deadline for the

state to charge a detained defendant.  *See* Fla.R.Crim.P. 3.134.[2]

---

[1]"Ex." refers to the exhibits submitted as attachments to the state's response (Doc 22) to Mr. Green's § 2254 petition.

[2]In any event, it does not matter whether the forty days ran from November 17, 2009, or from December 15, 2009; Mr. Green did not see Leiberman again, and did

Mr. Green told APD Leiberman that he was interested in the offer, but that he wanted to discuss it with his mother first. Ex. N at 22. Leiberman promised to return the next day, but neither he nor Niemczyk visited Mr. Green again before the plea offer expired. *Id*.

**Charge, Eventual Plea and Sentence**

On December 28, 2009, the state filed an information charging Mr. Green with escape, a second-degree felony. Fla. Stat. § 944.40; Ex. F. at 24. The case was assigned to the Honorable Lawrence Page Haddock. Ex. PD-1.

Without enhancement, escape is punishable by fifteen years in prison. Fla. Stat. § 775.082(d). On February 17, 2010, however, the state filed a notice of its intent to classify Mr. Green as a habitual felony offender under Fla. Stat. § 775.084, which, in cases involving second-degree felonies, raises the applicable maximum penalty to thirty years in prison. Fla. Stat. § 775.084(4)(a).

On April 5, 2010, Mr. Green pleaded guilty as charged, with no agreement as to sentence. *See generally* Ex. N. Following the procedures outlined in Fla. Stat. § 775.084(3)(a), the court adjudicated Mr. Green to be a habitual felony offender. *Id*. at 14, 26.

---

not meet APD Niemczyk until February 17, 2009, after the offer had expired under either calculation. Ex. N at 22.

During his allocution before imposition of sentence, Mr. Green attempted to bring to the court's attention his counsel's failure to return to jail to discuss with him the state's one-year plea offer. Ex. N at 21. The state at that point objected to "any reference to any prefiling plea negotiations." *Id*. Niemczyk acknowledged that "there was a prefiling situation." *Id*. The court allowed Mr. Green to continue, and he stated that Leiberman had visited him in jail on Niemczyk's behalf and told him that the state attorney had offered him twelve months in jail. *Id*. at 21-22. Niemczyk instructed Mr. Green not to say that, "to skip that part." *Id*. at 22. Nonetheless, Mr. Green continued:

> I was currently serving – I told Mr. Lehman (phonetic) that I was – I would need to speak with my mother about the situation. I also told him I had a letter for the Judge to read. He stated do not send that letter to the judge and promised – and to promise me I would not – and he will be back the next day to see if I had made a decision, but he never showed. I didn't see my attorney Mr. Todd Niemczyk until February 17th. By that time the offer had been taken off the table. I would be – I would have taken the 12 months but now – oh, excuse me, but I'll stop right there.

Ex. N at 22.

Niemczyk then spoke in mitigation of sentence:

> Judge, Mr. Green stands before you in repeat offender court. There was some negotiation early on, a day late and a dollar short, which really affects my job or any public defender's job, you know, from the get-go we have a limited amount of time to sort of make this attorney-client connection.

5

Ex. N at 22.   Niemczyk then moved on to the sentence that he was requesting on

behalf of his client; he stated that Mr. Green had "offered to waive any credit time in

exchange for asking the Court for a county sentence, which is what he – you know,

he's given up the time he's served already." *Id*. at 24.[3]

> In response to this request, the court addressed Mr. Green:

> And the problem I have with the thought of a county jail sentence is
> your record. You've got 54 months and 72 months for robberies and
> then you've got 120 months for something. I didn't get down what that
> was. You've got a six months for an unarmed robbery, I guess. How that
> came to be I don't know. And then I've got a charge here where you
> could get up to 30 years, and I come back and give you 12 months, there
> is no logic to that. The price of breaking the law is supposed to go up
> every time you do it, and that is kind of why they created the habitual
> offender laws to sort of try to make judges do that, even if they didn't
> want to.

*Id*. at 25.   The court sentenced Mr. Green to ten years in prison, "to be served as an

habitual felony offender under Chapter 775.084 of the Florida Statutes." *Id*.

**Appeal**

Mr. Green did not timely take a direct appeal from this conviction or from the

sentence imposed; a habeas petition for a belated direct appeal was denied on

December 6, 2010.  Ex. C.

---

[3][Florida Statutes] section 922.051 permits imprisonment in a county jail "if the
total of the prisoner's cumulative sentences is not more than 1 year." *Singleton v.
State*, 554 So.2d 1162, 1164 (Fla. 1990) (quoting § 922.051).

**Post-Conviction Proceedings**

On May 5, 2011, Mr. Green filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. F at 3.  He filed an amendment to this motion on February 1, 2012.  *Id* at 31.  The motion alleged six grounds for relief.  *Id*.  The overarching constitutional claim of the motion was that

> Defendant was denied his Sixth and Fourteenth Amendment rights of the United States Constitution to effective assistance of counsel when counsel performed deficiently concerning the following grounds. The results of Counsel's incapacity to perform effectively prejudiced the Defendant, and had counsel performed in a different manner the outcome of the trial would have been different.

*Id*. at 32.   Ground One specifically alleged that "counsel rendered ineffective assistance for failing to visit the defendant, as promised, to confirm the defendant's acceptance of the states favorable plea offer."  *Id*.

**Trial Court Ruling**

Mr. Green's 3.850 motion was adjudicated not by the original trial judge, Judge Haddock, but by the Honorable Brad Stetson.  Ex. F at 110.  After requesting a response from the state only as to Ground Five of Mr. Green's motion, and without holding an evidentiary hearing, the court denied the motion on September 5, 2012. *Id*. at 103; *see also id.* at 43, 91.  As to Ground One, the court made no finding concerning the adequacy of counsel's representation, ruling instead that Mr. Green

had not shown that he was harmed by any alleged deficiency:

> During the sentencing proceedings, the Court clearly rejected any possibility of a twelvemonth sentence for Defendant. Consequently, counsel was not ineffective for failing to convey Defendant's acceptance of the alleged plea offer when the Court would reject that plea deal. Defendant fails to establish how the outcome of the proceedings would have been different had counsel communicated to the State Defendant's acceptance of the twelve-month plea deal.

Ex. F at 104.

**Florida Appellate Court Rulings**

Mr. Green appealed the court's denial of his 3.850 motion to the Florida First District Court of Appeal.  Ex. F at 170.  The court affirmed per curiam without opinion on February 28, 2013. Ex. J; *Green v. State*, 109 So.3d 784 (Fla.1st DCA 2013)

**Federal District Court**

On April 8, 2013, Mr. Green submitted for mailing the instant Petition under 28 U.S.C. § 2254 by a Person in Custody Pursuant to a State Court Judgment.  Doc 1 at 17.  The state filed its answer, Doc 22, and on October 1, 2014, this Court, stating that it was of the opinion that in Ground One of his petition Mr. Green had alleged a colorable ground for relief, appointed the office of the undersigned to represent Mr. Green and to file an additional brief addressing the claim raised in Ground One (and any other issues raised in the Petition that counsel may deem to be worthy of further

discussion).  Doc 28 at 3.  This is that brief, which addresses only Ground One of the instant petition.

**Procedural Posture**

Ground One of Mr. Green's federal petition is verbatim identical to the Ground One raised in his state post-conviction motion as amended.  *Compare* Ex. F. at 32 with Doc 1 at 3.  The procedural posture of this constitutional claim is uncomplicated: In its answer to the petition, the state has raised no defenses of timeliness, procedural default, or failure to exhaust.  *See generally* Doc 22.

## ARGUMENT

### I.  TRIAL COUNSEL'S DEFICIENT PERFORMANCE PREJUDICED MR. GREEN DURING A CRITICAL STAGE.

#### A.  Trial Counsel's Failure to Allow Mr. Green to Consider the Offered Plea Deal Was Unconstitutionally Deficient Performance.

The United States Supreme Court established the legal principles that govern claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  An ineffective assistance claim has two components: the first component requires the petitioner to show that counsel's performance was deficient, which is to say that it "fell below an objective standard of reasonableness."  *Id*. at 688, 104 S.Ct. 2052. The Court has declined to articulate specific guidelines for

9

appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*.

It is now beyond question, however, that under the Sixth Amendment, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). It is equally beyond question that when defense counsel allows a formal plea offer with an expiration date to expire without advising the defendant or allowing him to consider it, defense counsel's performance "f[alls] below an objective standard of reasonableness." *Id*. at 1410.

The state has not disputed before the state post-conviction court or before this Court that it made Mr. Green an offer of twelve months in county jail. *See generally* Ex. F at 91; Doc 22. Nor has it disputed his allegation that his trial counsel, by failing to return to the jail to visit Mr. Green as promised, unreasonably allowed the plea offer to expire without allowing him a meaningful opportunity to consider and accept it. *Id*.

That his counsel had performed unreasonably was corroborated by Mr. Green's statements to this effect at his combined change-of-plea/sentencing hearing, and by the parties response to them. Ex. N at 22. Not only did Niemczyk not contradict

these statements, he confirmed before the court that "[t]here was some negotiation early on," adding, "a day late and a dollar short, which really affects my job or any public defender's job, you know, from the get-go we have a limited amount of time to sort of make this attorney-client  connection."

Mr. Green has thus satisfied the first component of the *Strickland* test.

## B.     Trial Counsel's Failure Prejudiced Mr. Green.

The second component of the *Strickland* ineffective assistance test requires the defendant to show that his counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  *Frye*, 132 S.Ct. at 1409.  "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."  *Id*.  "To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Id*.

11

The "reasonable probability" standard is a low one, being less than a preponderance of the evidence. *See Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495 (2000) (noting that a state-court decision applying a preponderance-of-the-evidence standard to a question of attorney competence would be contrary to *Strickland*'s holding "that the prisoner need only demonstrate a 'reasonable probability'" of a different outcome);*see also Agan v. Singletary* 12 F.3d 1012, 1018-1019 (11th Cir. 1994) ("This 'reasonable probability' of a different result is simply a probability sufficient to undermine confidence in the outcome of the case; a standard less than proof by a preponderance of the evidence").[4]

### 1.    Mr. Green Would Have Accepted the Plea.

Mr. Green has sworn throughout state and federal post-conviction proceedings that had it not been for his counsel's failure to return to visit him as promised, he would have accepted the state's plea offer before it expired. *See* Ex. F at 33 ("Had counsel rendered effective assistance and visited the defendant when he promised to,

---

[4]In *Harrington v. Richter*, the Supreme Court reaffirmed that: "[i]n assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is *reasonably likely* the result would have been different. This does not require showing that counsel's actions more likely than not altered the outcome . . . ." 131 S.Ct. 770, 791-92 (2011) (internal quotation marks and citations omitted) (emphasis added).

the defendant's constitutionally protected due process rights would have been protected, counsel would have received the defendants confirmation of his acceptance of the state's plea offer") *and* Doc. 1 at 4 ("Appellant [*sic*] contends that if he would have been able to accept the plea in front of that judge he would have had a different sentence.").

Contemporaneous evidence confirms that Mr. Green would have accepted the one-year plea offer but for his counsel's unreasonable performance.  Mr. Green so stated at his sentencing hearing.  Ex. N at 22.  And as a factor standing alone, the fact that Mr. Green ultimately pleaded guilty to the same charge, with no agreement as to sentence, the day of his first meeting with Niemczyk, is more than sufficient to demonstrate a reasonable probability that he would have accepted the one-year offer.  *See Frye*, 132 S.Ct at 1411 ("There appears to be a reasonable probability Frye would have accepted the prosecutor's original offer of a plea bargain if the offer had been communicated to him, because he pleaded guilty to a more serious charge, with no promise of a sentencing recommendation from the prosecutor.")

## 2.    The State Would Not Have Withdrawn the Plea Offer.

"In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court

13

had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Frye*, 132 S.Ct at 1410.  Under Florida law, prosecutors do have the discretion to withdraw a plea offer before it is accepted by the court. *See* Fla.R.Crim.P. 3.172(g) (" No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements, and determinations required by this rule. Until that time, it may be withdrawn by either party without any necessary justification.")

There is, however, nothing in the record before the state post-conviction court to suggest that the prosecution would have withdrawn the one-year plea offer before it expired.  The state has not suggested otherwise in the post-conviction proceedings in state court and in this Court.  And there are no particular facts or intervening circumstances in the present case that suggest that the state would have withdrawn its offer to Mr. Green, unlike the respondent in *Frye*, who was arrested for driving with a revoked license *after* being offered a plea bargain to previous charges of driving with a suspended license. *Frye*, 132 S.Ct. at 1411 ("[G]iven Frye's new offense for driving without a license on December 30, 2007, there is reason to doubt that the prosecution would have adhered to the agreement . . .").

14

**3.    There Is More than a Reasonable Probability That the State Court Would Have Sentenced Mr. Green in Accordance with the Terms of the Agreement.**

By the same token, there is a reasonable probability that the trial court would have accepted Mr. Green's plea and imposed sentence under the terms of his plea agreement.  "It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences."  *Frye*, 132 S.Ct. at 1410.  It can thus be assumed that in Mr. Green's case, the state would not have made him an offer it believed would not be accepted by the court.

That the state trial court arrived at a different conclusion in adjudicating Mr. Green's constitutional claim was based entirely on its unreasonable and clearly erroneous determination of the facts.  In denying Mr. Green's 3.850 motion, the trial court wrote that "[d]uring the sentencing proceedings, the Court clearly rejected any possibility of a twelvemonth sentence for Defendant. Consequently, counsel was not ineffective for failing to convey Defendant's acceptance of the alleged plea offer when the Court would reject that plea deal."  Ex. F at 104.  As authority for this conclusion, the court cited the sentencing court's statement that "the problem I have with the thought of a county jail sentence is your record . . . I've got a charge here where you could get up to 30 years, and I come back and give you 12 months, there is no logic to that."  *Id*.; Ex. N at 25.

15

But as this Court acknowledges in its October 3, 2014 order, had Mr. Green been able to timely accept the twelve-month offer, he would not have been have been in repeat offender court and thus most likely not before Judge Haddock.  Doc 22 at 2-3.  The trial court's statements thus tells us nothing about what would have happened had Mr. Green appeared for change-of-plea and sentencing before a different judge, not as a habitual felony offender, but as one who has been offered and accepted a one-year offer from the state.

Even more tellingly, the statements of Judge Haddock relied on by the state 3.850 court in making its finding of harmlessness actually tell us nothing about what *Judge Haddock himself* would have done in the circumstances described above.  Only by reading these statements out of context can they support the interpretation that the 3.850 court gave them.  The context, however, was this: Niemczyk, arguing in mitigation of sentence, said to the court:

> So he stands before you today risking up to a 30-year sentence just asking Your Honor to, obviously, take into account his record which is not wonderful, he is in repeat offender court, but a lot of it is drug charges and theft charges relating to drugs and whatnot.
>
> . . .
>
> He has offered to waive any credit time in exchange for asking the Court for a county sentence, which is what he – you know, he's given up the time he's served already. I think that is at least a step in the right direction. I don't know if there is really that much more to say.

Ex. N at 23-24; Fla. Stat. § 922.051.

16

To this Judge Haddock responds:

[T]he problem I have with the thought of a county jail sentence is your record . . . I've got a charge here where you could get up to 30 years, and I come back and give you 12 months, there is no logic to that. The price of breaking the law is supposed to go up every time you do it, and that is kind of why they created the habitual offender laws to sort of try to make judges do that, even if they didn't want to.

*Id*. at 25.

In other words, Judge Haddock is responding to Niemczyk's request for county jail time (no more than a year's incarceration) in the context of repeat offender court where Mr. Green is before him as a habitual felony offender facing a maximum penalty of thirty years; he is not answering the hypothetical question whether he would have accepted the one-year plea offer originally made to Mr. Green where the latter would have been in normal felony court facing a maximum penalty of fifteen years. Judge Haddock makes clear that because Mr. Green is before him as a habitual felony offender, he feels a moral, if not a legal, obligation under the habitual offender laws to sentence Mr. Green to a higher sentence. *See* Ex. N at 25 ("The price of breaking the law is supposed to go up every time you do it, and that is kind of why they created the habitual offender laws to sort of try to make judges do that, even if they didn't want to.") But his statements say nothing about what he would have done otherwise. The 3.850 court's conclusion that the trial court would have rejected the

17

state's one-year plea offer finds no support whatever in the record before it.

"[N]inety-four percent of state convictions are the result of guilty pleas." *Lafler,* 132 S.Ct. at 1388. And as this court is surely aware from its own experience, a court's rejection of a plea agreement freely contracted by the parties is the great exception, not the rule. Under Florida law, "[i]f the trial judge does not concur in a tendered plea of guilty or nolo contendere arising from negotiations, the plea may be withdrawn," resulting in the placement of the case back on the trial docket of an already over-burdened court system. Fla.R.Crim.P. 3.172(h). The incentive for courts to accept plea deals is great. There is thus a more than reasonable probability that the trial court would have accepted Mr. Green's plea and imposed sentence under the terms of his plea agreement. *See Lafler*, 132 S.Ct. at 1387 ("The favorable sentence that eluded the defendant in the criminal proceeding appears to be the sentence he or others in his position would have received in the ordinary course, absent the failings of counsel.").

### 4.    Under the Terms of Plea Offer, Mr. Green's Sentence Would Have Been less Severe than the Sentence That in Fact Was Imposed.

Under the plea offer lost by Mr. Green due to counsel's deficient performance, he would have been sentenced to twelve months in county jail. Instead, Mr. Green was sentenced to ten years in Florida state prison "to be served as an habitual felony

offender under Chapter 775.084 of the Florida Statutes." Ex. N at 26. No more need

be said. Like the respondent in *Lafler*, Mr. Green has shown that but for counsel's

deficient performance there is a reasonable probability he and the trial court would

have accepted the plea offer, and that as a result of not accepting the plea offer he

received a sentence greater than he would have received. The second prong of the

*Strickland* test has thus been satisfied. *Lafler*, 132 S.Ct at 1391.

**C.     The State Court's Adjudication of the Constitutional Claim Raised as Ground One of Mr. Green's Federal Habeas Petition Is Not Entitled to Deference under AEDPA Because It Was Based on an Unreasonable Determination of the Facts Before It.**

Mr. Green brings a federal collateral challenge to a state conviction. Under the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may

not grant a petition for a writ of habeas corpus unless the state court's adjudication

on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As argued above in section I(B)(3), the state court's legal conclusion – that Mr.

19

Green's counsel was not ineffective for failing to convey his client's acceptance of the alleged plea offer because the court would have rejected the plea deal – was based entirely on an unreasonable and clearly erroneous determination of the facts before it. And "when a state court's adjudication of a habeas claim 'result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them." *Jones v. Walker*, 540 F.3d 1277, 1288 (11th Cir. 2008) (en banc) (quoting § 2254(d)); *accord Evans v. Secretary, Dept. of Corrections*, 703 F.3d 1316, 1343 (11th Cir. 2013).

Because the state 3.850 court unreasonably determined the facts relevant to Mr. Green's Sixth Amendment claim, this Court does not owe the state court's findings deference under AEDPA. *Id.* It should therefore apply the pre-AEDPA *de novo* standard of review to Mr. Green's habeas claim. *Id.*

## II. THE CORRECT REMEDY IN THESE CIRCUMSTANCES IS TO ORDER THE STATE TO REOFFER MR. GREEN THE ONE-YEAR PLEA DEAL.

Mr. Green is entitled to federal habeas relief on the record as contained in the state's Appendix. His version of the events underlying the lost plea opportunity was not contradicted by counsel for either party at his combined change-of-plea/sentencing hearing – indeed, his counsel seemed to confirm the lost opportunity,

attributing it to the "limited amount of time to sort of make this attorney-client connection," Ex. N at 22 – and it has not been contradicted by the state in the instant proceedings before this Court.

The Supreme Court held in *Lafler* that under these circumstances the proper exercise of discretion to remedy the constitutional injury is to require the prosecution to reoffer the plea proposal. *Lafler*, 132 S.Ct at 1389. "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," the court explained, and any remedy "must neutralize the taint of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id*. at 1388-1389 (internal quotation marks and citation omitted).

It would grant no windfall to Mr. Green if this Court were to order the state to reoffer the one-year plea deal; he has already served four more years in state prison than the original plea deal. Nor did the state invest considerable resources which would now be squandered as a result of having to reoffer Mr. Green the one-year offer; unlike the petitioner in *Lafler*, Mr. Green did not go to trial, but pleaded guilty as charged with no recommendation as to sentence.

21

## REQUEST FOR AN EVIDENTIARY HEARING

As argued above, it is Mr. Green's position that he is entitled to federal habeas relief on the record as contained in the state's Appendix.  In any event, he is, at the very least, entitled to an evidentiary hearing at which he can develop the factual basis for his claim. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 1940 (2007).

*Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), is no impediment to this Court holding an evidentiary hearing on Mr. Green's claim. *Pinholster* stands for the proposition that when a federal habeas court is answering the § 2254(d) inquiry, it must base its answers solely on the evidence known to the state court. *Pinholster*, 131 S.Ct at 1400.

But "[n]othing in *Pinholster*, or any other principle of habeas corpus, bars a District Court from conducting an evidentiary hearing where, as here: (1) the federal claim was adjudicated on the merits in state court; (2) there is a determination based only on the state court record that the petitioner has cleared the § 2254(d) hurdle; and (3) the habeas petitioner tried, but was not given the opportunity to develop the

factual bases of the claim in state court within the meaning of 28 U.S.C. § 2254(e)(2)."   *Madison v. Commissioner, Alabama Dept. of Corrections,* 761 F.3d 1240, 1249-1250 (11th Cir. 2014); *see also Stitts v. Wilson*, 713 F.3d 887, 895-897 (7th Cir. 2013) (same).

Mr. Green presented to the state court a prima facie claim entitling him to relief, and that claim was adjudicated on the merits.  For the reasons argued above, that adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  And Mr. Green requested that the state court grant him an evidentiary hearing, which was denied.   Ex. F at 31.  If this Court determines that he is not entitled to relief on the record as it now stands, it should nonetheless grant him the evidentiary hearing that he was erroneously denied in state court. *See Shriro*, *supra*.

## CONCLUSION

The petition for writ of habeas corpus should be granted.

DONNA LEE ELM
FEDERAL DEFENDER

s/ *Lisa Call*
Lisa Call
Assistant Federal Defender
Florida Bar No. 0896144
200 West Forsyth Street, Suite 1240
Jacksonville, FL 32202
Telephone: (904) 232-3039
Fax: (904) 232-1937

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic filing to Charles R. McCoy, Senior Assistant Attorney General, Office of the Attorney General, PL-01, The Capitol, Tallahassee, FL 32399-1050, this 28th day of October, 2014.

s/ *Lisa Call*
Lisa Call
Assistant Federal Defender

24