**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GREGORY GREEN,

      Petitioner,

v.                                                                                   Case No. 3:13-cv-394-J-32PDB

ATTORNEY GENERAL, STATE OF
FLORIDA and SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS,

      Respondents.

_____

# O R D E R

Petitioner, Gregory Green, was charged in state court with escape when he

failed to return from work release.   The State* offered him a plea deal of twelve

months in jail consecutive to his current sentence.   Due to his counsel's failure to

communicate with him and the State regarding this plea deal, the favorable plea offer

lapsed.   Green then pleaded guilty to the same charge without any agreement as to

sentence, and the state court sentenced him to ten years in prison.

Green filed this petition for a writ of habeas corpus alleging that he received

ineffective assistance of counsel in violation of the Sixth Amendment.   The State

concedes that Green's counsel performed deficiently and that Green has satisfied three

out of four elements of the prejudice inquiry under <u>Strickland v. Washington</u>, 466 U.S.

_____

    * The Respondents will always be referred to as "the State."

668 (1984) and <u>Missouri v. Frye</u>, 132 S. Ct. 1399 (2012).   The only element in dispute is whether it is reasonably probable that the state court would have accepted the plea agreement and sentenced Green in accordance with its terms had counsel not performed deficiently.

The state postconviction court denied Green's ineffective assistance of counsel claim on the merits.   Green contends that the state postconviction court's adjudication was based on an unreasonable determination of the facts in light of the evidence presented.   Under the Antiterrorism and Effective Death Penalty Act, the standard a petitioner must meet to obtain federal habeas relief is an intentionally difficult one.   <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011); <u>Clark v. Att'y Gen.</u>, --- F.3d ---, 2016 WL 1660403, at *10 (11th Cir. April 27, 2016).   Therefore, "it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."   <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 911 (11th Cir. 2011).   This is one of those rare cases.

## I.   **Procedural History**

### A.   **Green's Criminal Case**

On November 17, 2009, Green was arrested on a warrant for escape for failing to return from work release to the community transition center.   The following day, the public defender's office was appointed to represent Green.   Under Florida Rules of Criminal Procedure, the State had forty days from the date of Green's arrest (or until December 28, 2009[1]) in which to file an information formally charging Green.

---

[1] Because the fortieth day was a Sunday, the deadline became December 28,

See Fla. R. Crim. P. 3.134.

It took about a month for Green's lawyer to first see him.[2]   By then, Green's arraignment had already been continued twice.   See Doc. 22-1 at 3.   On December 15, 2009, Green was visited at the county jail by Andrew Lieberman, a lawyer from the public defender's office who was a colleague of Green's assigned attorney, Todd Niemczyk.   Mr. Lieberman informed Green that the State had offered a plea deal of twelve months, consecutive to his current sentence.[3]   Green understood that the offer would remain open for forty days from December 15, 2009, the date that it was communicated to him, which would be January 24, 2010.[4]   Green told Mr. Lieberman that he was very interested in accepting the State's plea offer, but he wanted to discuss the matter with his ailing mother.   Mr. Lieberman understood and agreed to return the next day to confirm Green's answer.[5]   Mr. Lieberman never returned, nor did he

_____

2009.

[2] The State does not dispute Green's allegations regarding the performance of his counsel.

[3] According to a letter from Mr. Niemczyk, Mr. Lieberman also informed Green of his pending status as a habitual offender and that, in the event he rejected the plea offer, he would be prosecuted in Repeat Offender Court and the State would seek thirty years' imprisonment.   See Doc. 22-1 at 82.

[4] In supplemental briefing, Green's current counsel submits that Green likely misunderstood the duration of the outstanding offer.   Green's counsel submits that the offer was likely a pre-charge offer, open for forty days from the date of arrest, which would be the State's final deadline for filing a formal charge against Green.   See Doc. 30 at 3.   Under that assumption the offer would have expired on December 28, 2009. The precise date of the offer's expiration is immaterial because under either formulation, counsel did not communicate with Green again until after the offer had expired.

[5] It is logical that Mr. Lieberman would have agreed to return so quickly because Green was again scheduled for arraignment on December 17, 2009.   See Doc.

ever communicate again with Green about the plea offer.   Indeed, other than the December 15, 2009, meeting, there is no record that either Mr. Lieberman or Mr. Niemczyk ever communicated with Green or followed up regarding the outstanding plea offer until after it had expired.[6]

Although Green was scheduled for arraignment on December 17, 2009, the docket reflects that the arraignment was continued for the third time.   On December 28, 2009, the State filed a one-count information charging Green with escape.   He was arraigned on the charge on January 15, 2010.   Although the docket reflects that Green was present for arraignment, it is ambiguous as to Mr. Niemczyk's presence. See Doc. 22-1 at 3.   Green alleges, and the State does not dispute, that Mr. Niemczyk was not present.

Green says that he unsuccessfully tried to contact his attorney.   On January 26, 2010, Mr. Niemczyk responded to Green by letter.[7]   However, Green says that the first time Mr. Niemczyk spoke with him was February 17, 2010.   By that time, the plea offer had expired, and the State had filed both the information and the notice of intent to seek habitual felony offender status under Florida Statute § 775.084.[8]

_____

22-1 at 3.

[6] In fact, there is no record that Mr. Lieberman or Mr. Niemczyk communicated with Green at all until Mr. Niemczyk wrote him a letter on January 26, 2010.   See Doc. 22-1 at 82.

[7] There are no letters from Green to the Public Defender's Office in the record; however, Mr. Niemczyk refers in his response to a letter he received from Green under his alias, Willie Smith.   See Doc. 22-1 at 82.

[8] After the plea offer lapsed, Green complained about his counsel to counsel's supervisor and the court.   See Doc. 22-1 at 4, 85, 117-19. The docket reflects that the court held two hearings pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA

On April 5, 2010, Green appeared in the Repeat Offender Court[9] of the Fourth Judicial Circuit in Duval County and entered an open plea of guilty to a charge of escape from work release.   See Doc. 22-2 at 94-120.   There was no agreement with the prosecutor as to the length of sentence.   The court found that Green was a habitual felony offender pursuant to Florida Statute § 775.084.   The criminal punishment code score sheet, which accounted for Green's criminal history, recommended a minimum sentence of 21.6 months' imprisonment.   The prosecutor highlighted Green's criminal history and asked the court to impose a sentence of fifteen years.   During allocution, Green attempted to inform the court of counsel's lack of communication regarding the plea offer that ultimately lapsed, but he was precluded (or at least dissuaded) from sharing all of the details by both his counsel and the prosecutor.   On behalf of Green, Mr. Niemczyk requested a county jail sentence, which can be no more than twelve months.   In response, the court stated:

> [T]he problem I have with the thought of a county jail sentence is your record.   You've got 54 months and 72 months for robberies and then you've got 120 months for something.   I didn't get down to what that was.   You've got a six months for an unarmed robbery, I guess.   How that came to be I don't know.   And then I've got a charge here where you could get up to 30 years, and I come back and give you 12 months, there is no logic to that.   The price of breaking the law is supposed to go up every time you do it, and that is kind of why they created the habitual offender laws to sort of try to make judges do that, even if they didn't want to.   But with a record like yours, there isn't much to recommend leniency.

1973).   Doc. 22-1 at 4.   Neither party addressed the impact, if any, of the Nelson hearings on the federal habeas claim, so there is no need for this Court to do so.

[9] The Repeat Offender Court was created in 1988 as a separate division (Division CR-F) to handle and dispose of career criminal cases.   See Twelfth Amended Administrative Order No. 88-21 Re: Career Criminal Project of the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida, March 20, 2001.

Doc. 22-2 at 118.    The court sentenced Green to a ten-year term of imprisonment. This sentence was five years less than the State's request but nine years more than the lapsed plea deal that had previously been offered to Green.

Green did not file a timely direct appeal.    His request to file a belated direct appeal was denied on December 6, 2010.    See Doc. 22-1 at 51.

## B. **State Postconviction Proceedings**

Green filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850.[10]    See Doc. 22-1 at 69-108.    He raised six grounds for relief, all premised on ineffective assistance of counsel.    To his 3.850 Motion, Green attached six exhibits:    (1) a letter from his Assistant Public Defender Todd Niemczyk, dated January 26, 2010; (2) a letter from Public Defender Matt Shirk dated March 12, 2010; (3) arrest report; (4) information; (5) docket report; and (6) work release disciplinary report.

The State did not respond to Green's claim of ineffective assistance of counsel arising from the lapsed plea deal because the postconviction court only required a response on ground five, which involved a different issue.    See Doc. 22-1 at 109-110; Doc. 22-2 at 9-14.    The judge who adjudicated the state postconviction motion was different from the one who had accepted Green's plea and sentenced him to ten years. Without holding an evidentiary hearing, the court denied all six of Green's claims on

---

[10]  Prior to filing his 3.850 Motion, Green filed and the court denied a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b). See Doc. 22-1 at 59.    Green appealed, and the appellate court affirmed per curiam without opinion and issued the mandate.    Doc. 22-1 at 64-65.

September 5, 2012.   Doc. 22-2 at 21-64.

Green filed an appeal.   The First District Court of Appeal affirmed per curiam and without opinion on February 28, 2013.   See Doc. 22-2 at 176-77; see also Green v. State, 109 So.3d 784 (Fla. 1st DCA 2013).

### C. Federal Postconviction Proceedings

Green timely filed this federal Petition.   Doc. 1.   He also filed an appendix of exhibits (Doc. 2) and a Memorandum of Law.   Doc. 3.   Essentially, he repeated the six grounds for relief that he had alleged in his state 3.850 Motion.   The State filed an Answer with exhibits attached.   Doc. 22.   Green filed a Reply (Doc. 24) and supplemental authority.   Doc. 26.   After the Court appointed counsel for Green, both sides filed supplemental briefing.   See Docs. 28, 30, 32.   Thus, the case is ripe for review.

## II.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see, e.g., Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1293 (11th Cir. 2015).   Green submits in supplemental briefing that the state trial

court's ruling on the ineffective assistance of counsel claim involving the lapsed plea deal was based on an unreasonable determination of the facts in light of the evidence presented in the state court 3.850 proceedings.   See 28 U.S.C. § 2254(d)(2).

In reviewing the state court's factual determinations, the federal court may not characterize the determinations as unreasonable "'merely because [it] would have reached a different conclusion in the first instance.'"   Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see also Daniel v. Comm'r, Ala. Dep't of Corr., --- F.3d ---, 2016 WL 2849481, at *6 (11th Cir. May 16, 2016); cf. French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1267 (11th Cir. 2015) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.") (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)), cert. denied, 136 S.Ct. 815 (2016); Landers, 776 F.3d at 1293-94.   "Instead, § 2254(d)(2) requires that [the federal court] accord the state trial court substantial deference."   Brumfield, 135 S. Ct. at 2277; see also Daniel, 2016 WL 2849481, at *6; French, 790 F.3d at 1265; Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013) (en banc).   "If [r]easonable minds reviewing the record might disagree about the state court factfinding in question, on habeas review that does not suffice to supersede the state court's factual determination."   Brumfield, 135 S. Ct. at 2277 (citations and quotations omitted); Daniel, 2016 WL 2849481, at *6; Landers, 776 F.3d at 1294 (applying the standard articulated in Richter for § 2254(d)(1) to § 2254(d)(2)). The state court's determination must be "objectively unreasonable." Landers, 776 F.3d

at 1294 (quoting Miller–El v. Cockrell, 537 U.S. 322, 340 (2003)).   Under Section 2254(e)(1), "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence."   Jones v. Walker, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc); see also 28 U.S.C. § 2254(e)(1).[11]

"[H]owever, '[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'"   Brumfield, 135 S. Ct. at 2277 (quoting Miller-El, 537 U.S. at 340); see also Daniel, 2016 WL 2849481, at *6;   Burgess v. Comm'r, Ala. Dep't of Corr., 723 F.3d 1308, 1315 (11th Cir. 2013).   "'[I]f a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release.'"   Daniel, 2016 WL 2849481, at *6 (quoting Trevino v. Thaler, 569 U.S. ---, ---, 133 S. Ct. 1911, 1917 (2013)).

Finally, "[o]nce a federal court determines that a state court decision is unreasonable under § 2254(d), '[the court is] unconstrained by § 2254's deference and must undertake a de novo review of the record.'"   Daniel, 2016 WL 2849481, at *7 (quoting Adkins v. Warden, Holman CF, 710 F.3d 1241, 1255 (11th Cir. 2013)); see also French, 790 F.3d at 1268; Cooper v. Sec'y, Dep't of Corr., 646 F.3d 1328, 1353 (11th Cir.

---

[11]The interaction between § 2254(d)(2) and § 2254(e)(1) is "somewhat murky." Clark, 2016 WL 1660403, n.3; see also Brumfield, 135 S.Ct. at 2282; Landers, 776 F.3d at 1294 n.4; Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); Jones, 540 F.3d at 1288 n.5.   See infra at 21 n.18.

2011); <u>Jones</u>, 540 F.3d at 1288 n.5.   "When a state court's adjudication of a habeas claim 'result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' . . . [the court] is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them."   <u>Jones</u>, 540 F.3d at 1288 n.5.

### III.   **Evidentiary Hearing**

To make the determination under 28 U.S.C. § 2254(d)(2), the Court may consider only the state court record.   <u>Landers</u>, 776 F.3d at 1295.   Once a petitioner has demonstrated an unreasonable determination of fact on the part of the state court, based solely on the state court record, the decision to grant an evidentiary hearing rests in the discretion of the district court.[12]   <u>Id.</u> (quotations and citations omitted).

### IV.   **Ineffective Assistance of Counsel**

Under <u>Strickland</u>, to prevail on a claim of ineffective assistance of counsel, a petitioner must show both deficient performance and resulting prejudice.   466 U.S. at 687.   In the context of plea agreements, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."   <u>Frye</u>, 132 S. Ct. at 1408.   "When defense counsel allow[s] the offer to expire without advising the defendant or allowing him to consider it, defense counsel [does] not render the effective assistance the

---

[12] Section 2254(e)(2) of AEDPA also limits the federal court's authority to hold an evidentiary hearing in certain circumstances.   <u>See</u> <u>id.</u>; <u>Pope v. Sec'y, Dep't of Corr.</u>, 680 F.3d 1271, 1288 (11th Cir. 2012).   Because the Court need not conduct an evidentiary hearing, <u>see</u> <u>infra</u> at 22, it is not necessary to address the limitations of § 2254(e)(2).

Constitution requires." Id.; Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014).

To demonstrate prejudice resulting from counsel's deficient performance, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.   The "reasonable probability" standard is less than a preponderance of the evidence.   See Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (noting that a state court decision applying a preponderance-of-the-evidence standard to the question of prejudice would be contrary to Strickland's holding "that the prisoner need only demonstrate a 'reasonable probability'" of a different outcome); see also Agan v. Singletary, 12 F.3d 1012, 1018-19 (11th Cir. 1994) ("This 'reasonable probability' of a different result is simply a probability sufficient to undermine confidence in the outcome of the case; a standard less than proof by a preponderance of the evidence."). "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 at 693; see also Richter, 562 U.S. at 111-12.   However, "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. "The difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Id. at 112 (citation omitted).

Applying Strickland, the Supreme Court in Frye articulated four elements of prejudice specific to lapsed plea offers.   132 S. Ct. at 1409.   A petitioner must show

it is reasonably probable that:  (1) he would have accepted the earlier plea offer had he been afforded effective assistance of counsel; (2) the plea would have been entered without the prosecution canceling it; (3) the trial court would not have refused to accept it, if it had the authority to exercise that discretion under state law; and (4) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.  Id.; see also Osley, 751 F.3d at 1222 (articulating the same elements but combining the first two into one).

## V.    **Findings of Fact and Conclusions of Law**

### A. **Ground One**

In ground one, Green argues that counsel was constitutionally ineffective when he failed to convey Green's acceptance of the State's plea offer.  See also Osley, 751 F.3d at 1222.   Under Strickland, 466 U.S. at 668, and Frye, 132 S. Ct. at 1399, Green must show both deficient performance and prejudice to prevail on his claim of ineffective assistance of counsel involving a lapsed plea offer.   The State concedes that Green's counsel performed deficiently. See Doc. 32 at 3.  The Court agrees.[13]  By counsel failing to follow up with Green regarding the plea offer as he said he would, failing to communicate Green's interest in accepting the offer to the State, and allowing the plea offer to lapse without further communication with (let alone consideration by) Green, counsel's performance was constitutionally deficient.[14]

_____

[13] In light of the State's concession that counsel's performance was deficient, the Court need not address the federal court's standard of review regarding that prong of Strickland.  See Brumfield, 135 S. Ct. at 2282 (comparing Wiggins v. Smith, 539 U.S. 510, 534 (2003), with Richter, 562 U.S. at 98).

[14] Mr. Niemczyk himself acknowledged at sentencing that "[t]here was some

The State has also conceded that Green has satisfied three out of four elements of the prejudice inquiry specified in <u>Frye</u> for lapsed plea offers.   <u>See</u> Doc. 32 at 7 n.5. The State has conceded that there is a reasonable probability that Green would have accepted the plea offer, the prosecution would not have canceled it, and the end result would have been more favorable to Green.   <u>See</u> <u>Frye</u>, 132 S. Ct. at 1409; <u>Osley</u>, 751 F.3d at 1222.   The only remaining issue is whether it is reasonably probable the state court would have accepted the plea deal and sentenced Green in accordance therewith. <u>See</u> <u>Frye</u>, 132 S. Ct. at 1409; <u>Osley</u>, 751 F.3d at 1222.   However, this Court must first give the state postconviction court's determination the deference it is due under AEDPA and determine whether the state court unreasonably determined the facts in light of the evidence presented in state court.[15]   <u>See</u> 28 U.S.C. § 2254(d)(2); <u>Daniel</u>, 2016 WL 2849481, at **6, 24.

### 1. **Application of AEDPA Deference**

The state postconviction court denied Green's claim on the merits.[16]   The court identified <u>Strickland</u> (but not <u>Frye</u>[17]) and addressed the prejudice prong:

---

negotiation early on, a day late and a dollar short, which really affects my job or any public defender's job, you know, from the get-go we have a limited amount of time to sort of make this attorney-client connection."   Doc. 22-2 at 115.

[15] The requirement that the Court must make a finding under § 2254(d)(2) based exclusively on the state court record before proceeding to a de novo review of the constitutional claim may cause the Court to overlap in its analysis of the issues.

[16] In conducting the inquiry under § 2254(d)(2), the federal court "looks through" the Florida appellate court's summary denial and evaluates the state trial court's reasoned decision denying Green relief.   <u>Brumfield</u>, 135 S. Ct. at 2276.

[17] Both <u>Frye</u> and <u>Lafler v. Cooper</u>, 132 S.Ct. 1376 (2012), were decided on March 21, 2012, almost six months before the state court's denial of Green's 3.850 Motion on September 5, 2012.

> During the sentencing proceedings, the Court clearly rejected any possibility of a twelve-month sentence for Defendant. (Ex.H at 25:6-22). Consequently, counsel was not ineffective for failing to convey Defendant's acceptance of the alleged plea offer when *the Court would reject that plea deal. Defendant fails to establish how the outcome of the proceedings would have been different* had counsel communicated to the State Defendant's acceptance of the twelve-month plea deal.

See Doc. 22-2 at 23 (emphasis supplied). Upon thorough review of the record and consideration of the applicable law, this Court determines that this is the "rare case in which the petitioner has met the requirement of § 2254(d)(2) by showing the state courts made an unreasonable factual determination." Jones, 540 F.3d at 1288. The state postconviction court's determination of the facts relating to ground one was objectively unreasonable. See 28 U.S.C. § 2254(d)(2); Daniel, 2016 WL 2849481, at *6; Landers, 776 F.3d at 1293-94.

First, the state postconviction court's factual finding that "the [sentencing] Court would reject that plea deal" was objectively unreasonable. Doc. 22-2 at 23. When determining that "the Court would reject that plea deal," the state postconviction court relied exclusively on the court's comments at sentencing when rejecting the Petitioner's request for a county jail sentence of twelve months. Undeniably, the transcript reflects that the sentencing court stated that "the problem I have with the thought of a county jail sentence is your record . . . I've got a charge here where you could get up to 30 years, and I come back and give you 12 months, there is no logic to that." Doc. 22-2 at 118. Although the state postconviction court's reliance on the sentencing judge's comments may be superficially appealing, the postconviction court

failed to consider the context of the sentencing court's statements and did not take into consideration other relevant and material evidence that would likely have led it to a different conclusion.   The sentencing court was adjudicating a contested hearing in Repeat Offender Court, after the State had declared Green a habitual felony offender and requested a fifteen-year sentence, and the defense counsel had asked for a twelve-month sentence.   The sentencing court's primary decision was whether to sentence Green to fifteen years as requested by the State, twelve months as requested by the defense counsel, or something in between.   If the plea deal had been consummated, the sentencing judge would have been presiding in regular felony court (not Repeat Offender Court) in an uncontested hearing where a plea agreement was presented involving a nonviolent, victimless crime and a jointly recommended sentence of one year.   The primary decision would have been whether to accept the plea agreement and sentence Green in accordance therewith.   The state postconviction court's focus on the comments of the sentencing court was misplaced, ignoring the relevant context and resulting in an unreasonable determination of the facts.

Moreover, the state postconviction court applied faulty logic when concluding that because the Repeat Offender Court rejected Green's request for a twelve-month sentence at a contested sentencing where the State was seeking fifteen years, the regular felony court would have likewise rejected a jointly presented plea deal agreeing upon a twelve-month sentence.   That analysis compares apples to oranges. Rejecting a defendant's request for a particular sentence is not the same as rejecting

a plea agreement specifying the same sentence.   That the sentencing judge rejected Green's request to impose a twelve month sentence at a contested hearing in Repeat Offender Court where the State was requesting fifteen years does not even suggest the conclusion that the sentencing court would have rejected the plea deal for twelve months had it been presented to the regular felony court early in the case as an uncontested, State-supported, agreed-upon resolution.   The context of the two situations is too dissimilar to apply the sentencing judge's comments to conclude that the regular felony court would have also rejected the plea deal.   Therefore, the state postconviction court's finding that the sentencing court "would reject that plea deal" is objectively unreasonable.   Cf. Burgess, 723 F.3d at 1316 (finding that the state postconviction court unreasonably determined the facts by relying on evidence that was presented in an "entirely different context" and therefore indicated nothing substantive about the relevant issue).

The state postconviction court also found that Green "fail[ed] to establish how the outcome of the proceedings would have been different had counsel communicated to the State Defendant's acceptance of the twelve-month plea deal."   Doc. 22-2 at 23. Again, the state postconviction court erroneously relied solely upon the sentencing judge's rejection of Green's request for a twelve month sentence.   In doing so, the state postconviction court relied exclusively on an event that occurred long after Green's attorney had already performed deficiently by letting the plea offer lapse.   When measuring whether the outcome of the proceedings would have been different when a plea offer lapses, the court must "consider the circumstances as viewed *at the time of*

*the offer* and what would have been done *with proper and adequate advice*." <u>Alcorn</u> <u>v. State</u>, 121 So.3d 419, 432 (Fla. 2013) (emphasis in original).  It is insufficient to fast forward to the ultimate end of the case and find that the sentencing judge would have rejected a twelve-month sentence under circumstances completely different from those at the time the plea offer lapsed.   It is likewise insufficient to accept the State's suggestion that the state court would not have accepted the plea offer because Green's ultimate sentence was ten times as long as the original plea offer.   This has no bearing on the prejudice inquiry.   <u>See</u> <u>id.</u>

The factual determination of whether the outcome of the proceedings would have been different begins on December 16, 2009, immediately upon counsel's failure to return to verify and then communicate Green's acceptance of the plea offer to the State as he promised he would.   Green's arraignment was scheduled for December 17, 2009, and everything suggests that he would have been permitted to plead guilty at arraignment pursuant to the plea agreement, which was still open at that time. Instead, Green's court date was continued until January 15, 2010 (the record is silent as to why), well beyond the State's December 28, 2009, deadline to file the information, and his case was assigned to Repeat Offender Court.   All this occurred because Green's counsel never returned or communicated at all with Green until after the plea offer had lapsed.   Thus, the outcome of the proceedings would have been different in that Green could have pleaded guilty under the plea deal prior to the information being filed, prior to the assignment to Repeat Offender Court and before designation as a habitual offender.   More significantly, however, Green would have been standing

before the sentencing judge in regular felony court with the support of the State jointly asking the court to honor the plea agreement reached by the parties.   Thus, the state postconviction court's finding that Green failed to establish how the proceedings would have been different is objectively unreasonable.

Finally, the state postconviction court made an additional erroneous finding regarding the extent of Green's testimony at sentencing with respect to his attorney's failure to communicate his acceptance of the plea offer.   Specifically, the court wrote:

> In Ground One, Defendant claims that on December 15, 2009, counsel presented an offer from the State for twelve months in jail consecutive to Defendant's current sentence. (footnote omitted).   According to Defendant the offer was good for forty days.   Defendant alleges that he was very interested in the offer but wanted to consult with his mother before making a decision.   Counsel's assistant, although agreeing to return the next day, never returned.   (footnote omitted).   Moreover, Defendant claims counsel never returned Defendant's calls and that he then contacted Public Defender Matt Shirk by letter.   There is no record of this letter, and Defendant does not say when he wrote it. Defendant, however, includes a reply letter from Mr. Shirk addressed to "Willie Smith" written on March 12, 2010. (Ex.F.)   Willie Smith is Defendant's alias.   (Ex. G.) (footnote omitted).   Defendant claims he spoke with his counsel on February 17, 2010 – more than forty days after the State offered its plea deal and beyond the time Defendant had to accept the offer.   *Defendant testified to these circumstances at sentencing.*   (Ex. H. at 21:22-25; 22:1-17.)

Doc. 22-2 at 23 (emphasis supplied).

However, the state postconviction court conflated the circumstances about which Green testified at sentencing with the evidence presented only in the state postconviction proceeding.   As one example, the state postconviction court found that

18

Green had testified at sentencing that counsel never returned his calls, that he wrote Public Defender Matt Shirk a letter, and that Mr. Shirk wrote Green a reply.   The state postconviction court cited to the letter from Mr. Shirk.   However, the letter from Mr. Shirk was not part of the record in the underlying criminal case, and Green did not mention Mr. Shirk in his allocution.   Rather, Green's disjointed statement at sentencing regarding the circumstances of the failed plea deal was interrupted by both the prosecutor and his own counsel, who both appeared to be preventing or dissuading him from communicating the full and complete circumstances of his attorney's failures to communicate and the deleterious effects it had on his case.   Green's allocution proceeded as follows:

> THE DEFENDANT:   Dear Your Honor on behalf – my name is Gregory Green, and I'm respectfully asking that you will take a moment to consider the serious of this letter and the situation in it entirely.
>
> I am currently before you hereby being charged by information with count 1, escape.   I'm not written this letter to disclose any information pertaining to the facts of the circumstances surrounding my case but the situation about my mother's health condition and me being the only child.   My mother have health conditions, and me being the only child my mother have, she is 77 years old.
>
> First, I was visited on December 15th, 2009, personally by an unidentified attorney who I was under the impression was Mr. Todd Niemczyk –
>
> MS. KLINGENSMITH:   Judge, I'm going to object to any reference to any prefiling plea negotiations during sentencing if that is where he is going.
>
> THE COURT:   Is that where you are going?
>
> MR. NIEMCZYK:   I think he was going to mention some of

the circumstances, but as far as any negotiations, we wouldn't talk about that, but there was a prefiling situation.

THE COURT:   You can go ahead.

THE DEFENDANT:   I was under the impression that Mr. Todd Niemczyk, who months later informed me that the attorney that visit me was not him but assistant Mr. Andrew Lemson (phonetic), Mr. Lemson had informed me that the state attorney had offered me 12 months.

MR. NIEMCZYK:   Don't say that.   Skip that part.

THE DEFENDANT:   I was currently serving – I told Mr. Lehman (phonetic) that I was – I would need to speak with my mother about the situation.   I also told him I had a letter for the Judge to read.   He stated do not send that letter to the judge and promised – and to promise me I would not – and he will be back the next day to see if I had made a decision, but he never showed.

I didn't see my attorney Mr. Todd Niemczyk until February 17th.   By that time the offer had been taken off the table.   I would be – I would have taken the 12 months but now – oh, excuse me, but I'll stop right there.

Doc. 22-2 at 113-15.

Contrary to the state postconviction court's findings, the state sentencing judge had not read the letters written by Mr. Niemczyk and Mr. Shirk to Green, or heard Green explain that he understood the offer to be good for forty days from the date it was first communicated to him.   The sentencing judge was not aware of all the circumstances relating to counsel's deficient performance, and indeed, both the State and Green's own attorney interrupted Green's attempt to explain it to the judge. Thus, the state court unreasonably determined the facts when it found that Green had testified at sentencing to all of the circumstances surrounding the lapsed plea offer.

These findings by the state postconviction court were objectively unreasonable, making the legal conclusions that flowed from them also unreasonable.  See Adkins, 710 F.3d at 1241; Cooper, 646 F.3d at 1353; Jones, 540 F.3d at 1288 n.5.   The state court's findings were clearly erroneous, beyond any possibility for reasonable minds to disagree about the factfinding in question.[18]   See Brumfield, 135 S. Ct. at 2277; Daniel, 2016 WL 2849481, at *6; Landers, 776 F.3d at 1294.   Hence, this is the "rare case in which the petitioner has met the requirement of § 2254(d)(2) by showing the state courts made an unreasonable factual determination."[19]   Jones, 540 F.3d at 1288.

## 2. **De Novo Review**

Because the Court has found that the state postconviction court unreasonably determined the facts under § 2254(d)(2), the Court is no longer bound to defer to the state postconviction court's determination of the facts or the legal conclusions that flowed from them.   See Adkins, 710 F.3d at 1249; Cooper, 646 F.3d at 1352-53; Jones, 540 F.3d at 1288 & n.5. The Court must undertake a de novo review of the record. See Daniel, 2016 WL 2849481, at *7; French, 790 F.3d at 1268; Adkins, 710 F.3d at

---

[18] Assuming for sake of argument that the State's brief mention of § 2254(e)(1) (Doc. 32 at 8) was sufficient to avoid waiver, see Brumfield, 135 S. Ct. at 2282, and to the extent § 2254(e)(1) may also apply, Green has rebutted the presumption of correctness by clear and convincing evidence.   See Sharp v. Rolling, 793 F.3d 1216, 1228 n.10 (10th Cir. 2015) (the state court's finding failed either standard); Cooper, 646 F.3d at 1353 n.17 (under either standard, relief was warranted); cf. Cave, 638 F.3d at 747 (finding that the "fact-based decisions below did not turn on any distinction between 'unreasonableness' and a 'clear-and-convincing unreasonableness'").

[19] In the alternative, although not raised by Green in supplemental briefing, to the extent the state postconviction court's determination might be viewed as an application of Strickland to the facts, the Court finds that the application was unreasonable under § 2254(d)(1) for the reasons stated in analyzing the § 2254(d)(2) claim.   See French, 790 F.3d at 1269.

1250; <u>Cooper</u>, 646 F.3d at 1352-53; <u>Jones</u>, 540 F.3d at 1288 & n.5.

To aid in the <u>de novo</u> review, the Court has considered Green's request for an evidentiary hearing.   Because the State has conceded that counsel's performance was constitutionally deficient and that Green has satisfied three of four elements required to show prejudice under the circumstances, the only remaining issue is whether it is reasonably probable that the state court would have accepted the plea agreement.   The Court has carefully reviewed the record and concludes that the material facts necessary to decide that issue are already fully developed.   <u>See</u> <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th Cir. 1999).   Moreover, neither party seeks an evidentiary hearing.[20]   Because this Court can "adequately assess [Green's] claim without further factual development," an evidentiary hearing will not be conducted. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003).

Green need not prove with certainty that the state court would have accepted the plea deal; he must only show there is a "reasonable probability" that the court would have done so.   <u>Strickland</u>, 466 U.S. at 694.   The "reasonable probability" standard is less than the preponderance-of-the-evidence and more-likely-than-not standards.   <u>See</u> <u>Richter</u>, 562 U.S. at 111-12; <u>Williams</u>, 529 U.S. at 405-06; <u>Strickland</u>, 466 U.S. at 693; <u>Agan</u>, 12 F.3d at 1018-19.   Green must demonstrate a probability sufficient to undermine confidence in the outcome.   <u>Strickland</u>, 466 U.S. at 694.

In evaluating whether it is reasonably probable that the state court would have

---

[20] Green submits that he is entitled to federal habeas relief on the record as contained in the State's appendix (Doc. 22-1, et seq.).   <u>See</u> Doc. 30 at 22.   Only as an alternative does he request an evidentiary hearing.   <u>Id.</u>

accepted the plea deal, the Court recognizes the modern reality that plea bargaining plays a central role in securing convictions and determining sentences.  See Lafler, 132 S. Ct. at 1388; Frye, 132 S. Ct. at 1407 (recognizing that plea bargains have become central to the administration of the criminal justice system).  "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long.   That is what plea bargaining is.   It is not some adjunct to the criminal justice system; it is the criminal justice system."  Frye, 132 S. Ct. at 1407 (quoting Scott & Stuntz, Plea Bargaining as a Contract, 101 Yale L. J. 1909, 1912 (1992)) (emphasis in original).

With respect to plea offers, "[i]t can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences."  Frye, 132 S. Ct. at 1410.  It can thus be assumed that the State would not have made Green an offer it believed would not be accepted by the court. In any courtroom, local prosecutors and defense attorneys who regularly appear before judges become familiar with their customs and practices and vice versa.  See id. Courts are generally aware that early in a case, the attorneys have more information about the evidence, the defendant, and the circumstances of the crime; therefore, the judge is likely to defer to their negotiated plea agreement in the vast majority of cases. See Stephanos Bibas, Designing Plea Bargaining from the Ground Up: Accuracy and Fairness Without Trials as Backstops, 57 Wm. & Mary L. Rev. 1055, 1065 (2016).   In addition, although Florida courts have the discretion to reject plea agreements, it can be assumed that judges infrequently second-guess the attorneys' joint evaluation of an

appropriate sentence for a particular defendant unless the parties propose a sentence that is out of the mainstream.

Furthermore, the incentive for courts to accept plea deals is great.  In Florida, "[i]f the trial judge does not concur in a tendered plea of guilty or nolo contendere arising from negotiations, the plea may be withdrawn," resulting in the placement of the case back on the trial docket of an already over-burdened court system.  Fla. R. Crim. P. 3.172(h).  Accepting plea agreements allows courts to conserve their resources and dedicate their valuable time to disputed matters.  Given the high volume of criminal cases in a large metropolitan area, courts are likely to routinely accept plea agreements with few exceptions.  Indeed, "ninety-four percent of state convictions [nationwide] are the result of guilty pleas."  Frye, 132 S. Ct. at 1407; see also Lafler, 132 S. Ct. at 1388.

Given this backdrop, the Court easily finds that it is reasonably probable that the trial court would have accepted Green's plea agreement and imposed a twelve-month sentence in accordance therewith.  This is especially true considering that Green would have been pleading guilty in regular felony court, not Repeat Offender Court, prior to either the information or the habitual offender designation being filed. Moreover, Green's crime was failing to return to the community transition center after being released for work.  It was a nonviolent crime with no victim.  Other than the simple issuance of a warrant, the State did not spend any resources searching for Green, who was found two days later.  It is reasonably probable that the court would have deferred to the parties' agreement as to what the case was worth and accepted

the parties' agreement to a twelve-month sentence.   Thus, the Court finds that under Frye and Strickland, Green has demonstrated prejudice by showing that it is reasonably probable that the outcome of the proceedings would have been different but for the deficient performance of counsel.   Both prongs of Strickland/Frye have been satisfied, and Green has shown that his conviction and sentence rest upon a violation of the Sixth Amendment to the United States Constitution.   See Daniel, 2016 WL 2849481, at *6.   Accordingly, federal habeas relief is due to be granted on Green's claim of ineffective assistance of counsel.   See Johnson, 643 F.3d at 911.

### 3. **Remedy**

In Lafler, the Supreme Court envisioned that the injury suffered as a result of a lapsed or declined plea offer can come in at least one of two forms.   132 S. Ct. at 1389.   In cases where the sole advantage a defendant would have received is a lesser sentence, then a resentencing should be a sufficient remedy.   Id.   In other cases, where a resentencing alone would not be enough to redress the constitutional injury, the prosecution should be required to reoffer the plea proposal.   Id.   The Supreme Court, however, did not address specifically how to structure the remedy when the defendant has already served more time than the lapsed plea offer required.

Green has now served over five years more than the plea offer contemplated. No court is able to turn back the clock and effectuate a twelve-month sentence.   The State submits that at most, it should be required to offer Green a sentence of time served because reinstating the original plea bargain would have unspecified ancillary consequences that could result in an improper windfall to Green.   See id. at 1388 (the

remedy must neutralize the taint of a constitutional violation but not grant a windfall to the defendant) (citations and quotations omitted).

The precise remedy <u>Lafler</u> contemplates is not available.   The Court agrees with the State that the best way to effectuate the type of remedy contemplated by <u>Lafler</u> would be to resentence Green to time served.   The Court will direct the State to effectuate a resentencing to time served, thereby releasing Green.

**B.   <u>Grounds Two, Three, Four, Five and Six</u>**

In the remaining grounds, Green alleges five different failures by counsel which he claims give rise to constitutionally ineffective assistance. In ground two, he alleges that counsel misadvised him that if he pleaded guilty and asked for mercy from the court, he would only receive two to three years of prison time.   In ground three, he alleges that counsel failed to object to the charge of escape from work release when the facts did not constitute a violation of the statute.   In ground four, he alleges that counsel failed to object to the State's interruption of Green's allocution to the court during sentencing.   In ground five, he alleges that counsel failed to assert Green's right to release because the State did not file charges within the prescribed timeframe. In ground six, he alleges that counsel failed to present mitigating factors at sentencing.

The state postconviction court adjudicated all five claims on the merits.   This Court has reviewed the record and applicable law.   While some of these claims are interconnected with ground one, as to which the Court is granting relief, standing alone they do not provide an independent basis for relief.   Applying AEDPA's

deferential standard of review, Green is not entitled to relief on any of these claims of ineffective assistance of counsel.  The state court's decisions on grounds two through six were neither contrary to, nor involved unreasonable applications of, federal law as clearly established by <u>Strickland</u>; nor were the state court's decisions based on unreasonable determinations of the facts in light of the evidence presented in the state court proceeding.  <u>See</u> 28 U.S.C. § 2254(d). Thus, these claims are due to be denied.

Accordingly, it is hereby

**ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **CONDITIONALLY GRANTED IN PART** as to ground one, such that the State is required to effectuate a resentencing to time served and release Green by **August 1, 2016**.

2. The Petition is otherwise **DENIED**.

3. The Clerk shall enter judgment in accordance with this Order.

4. The Federal Public Defender's Office shall monitor compliance with this Order and ensure that Green is represented by constitutionally effective counsel in state court.

5. No later than **August 10, 2016**, the State shall notify this Court of its compliance with this Order.

6.  If Green appeals the denial of his Petition in pertinent part, the Court denies

a certificate of appealability.[21]

**DONE AND ORDERED** in Jacksonville, Florida the 22d day of June, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

lpb
Copies:

Counsel of record

---

[21] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, a certificate of appealability is not warranted.